**AMERICAN FAMILY INSURANCE GROUP, Defendant-Appellant/Cross Appellee,**

v.

**Joseph L. BLAKE, Plaintiff-Appellee/Cross Appellant.**

**No. 1-1181A331.**

Court of Appeals of Indiana, First District.

Sept. 21, 1982.

Rehearing Denied Oct. 26, 1982.

George Montgomery, Bamberger, Foreman, Oswald & Hahn, Evansville, for defendant-appellant/cross appellee.

Allen R. Hamilton, Lantz & Hamilton, Evansville, for plaintiff-appellee/cross appellant.

NEAL, Judge.

## STATEMENT OF THE CASE

Defendant-appellant/cross appellee American Family Insurance Group (American Family) appeals an order of the Vanderburgh Superior Court which granted plaintiff-appellee/cross appellant Joseph L. Blake's (Blake) motion for summary judgment upon his complaint for non-payment of benefits under an insurance contract. Blake cross appeals the trial court's order granting American Family's motion for summary judgment as to Count II of Blake's amended complaint, seeking punitive damages.

We reverse, in part, and affirm, in part.

## STATEMENT OF THE FACTS

The supporting materials for and against the parties' respective motions for summary judgment consist of the pleadings, affidavits, answers to interrogatories, stipulations of fact and depositions. From these materials in support of and in opposition to American Family's motion for summary judgment, we glean the following facts: On March 26, 1976, Blake applied to American Family for a family health insurance policy to cover him and his wife, Deborah J. Blake (Deborah). The provisions of the policy are not in dispute, and, in pertinent part, provide as follows:

"COVERED SICKNESS means sickness ... contracted by an insured and commencing[1] after this policy has been in force as to such insured not less than 30 days. ...

\* \* \* \* \* \*

## EXCLUSIONS

A. Medical expenses shall not be covered under this policy if such expenses are incurred for services, supplies or treatments:

\* \* \* \* \* \*

8. For ... sickness first manifested, whether or not initially diagnosed accurately, prior to the date the person on whose account such expense is incurred became an insured." (Footnote omitted.)

On April 23, 1976, Deborah was hospitalized with an admitting diagnosis of ulcerative colitis, an inflammatory bowel disease. Blake did not file a claim for benefits under the policy because Deborah's sickness and admission to the hospital was within the 30 day exclusionary period.

Deborah's attending physician, Dr. Stephen Braun, reported that her bowel trouble began sometime in January or February, 1976. Since that time, she has suffered from loose bowel movements, diarrhea, weight loss, lack of energy, and not feeling well for the past four months. Deborah's symptoms at the time of her April, 1976 hospitalization included those mentioned above as well as fever, poor appetite, vomiting and aching all over.

On December 23, 1976, Deborah again was admitted to the hospital, suffering from an exacerbation of her previous illness, ulcerative colitis. Once again, Blake did not file an insurance claim as it represented further treatment for her earlier, non-covered condition.

On January 13, 1977, Deborah was hospitalized for a third time with a recurrence of her bowel illness, and, as a result, Blake incurred hospital and doctor bills in the amount of $2,598.78. However, on this occasion, Blake filed an insurance claim, and subsequently, American Family denied the claim, stating that the "claim was for treatment of the continuing condition for which Mrs. Blake [Deborah] had first been hospitalized during the exclusionary period of the policy."

The January, 1977 hospitalization resulted in a diagnosis of granulomatous colitis or Crohn's Disease. Depositions taken from Deborah's examining and consulting physicians disclosed that Crohn's Disease and ulcerative colitis are similar if not related inflammatory bowel diseases which are of non-specific causes. Symptomatically, both diseases overlap a great deal, and frequently are difficult to distinguish.

Dr. Herman F. Rusche, a gastroenterologist, examined Deborah upon consultation, and, in his deposition, made the following statement on ulcerative colitis and Crohn's Disease:

> "A. That's an impossible thing to answer, I think, because they are the same disease ...
>
> \* \* \* \* \* \*
>
> ... All you can do is call it at the time you're seeing it and it's the same disease, that same disease was going on then as is going on now. What you call it is how you see it at the time. I don't think there's any difference in the disease. I think it's the same disease. I cannot separate it.
>
> \* \* \* \* \* \*
>
> A. In general, they are the same disease. The names that we are discussing are names that are applied by physicians to the disease process to differentiate it into subcategories that allow us to predict the course of the disease in the patient and to help treat them, particularly in later stages. The name is medical science applied; it's not inherent in the disease in terms of cause and this sort of thing. We don't know what causes either one of them."

On October 3, 1979, Blake filed the present action against American Family for an alleged breach of the insurance agreement for failure to reimburse him for medical bills. Blake later amended his complaint to include an additional count for punitive damages. Both sides filed motions for summary judgment, and, on February 11, 1981, the trial court granted Blake's motion as to Count I for payment of the medical bills, but denied Count II for punitive damages. Subsequently, a separate hearing was held on the issue of damages, after which the trial court entered judgment against American Family for the stipulated amount of $2,598.78 plus costs.

## ISSUES

American Family presents two issues for review which we restate as follows:

I. Whether the trial court erred in denying American Family's motion for summary judgment as to Count I of Blake's amended complaint where the evidence shows that Deborah's illness was manifest, active and exhibited distinct symptoms within the 30 day exclusionary period of the policy, and

II. Whether the trial court erred in failing to grant American Family's motion to strike paragraphs two (2) and three (3) of the affidavit of Deborah Blake offered in support of Joseph Blake's motion for summary judgment.

Restated, Blake presents the following issue on cross appeal:

III. Whether the trial court erred in denying his motion for summary judgment as to Count II of his amended complaint, seeking punitive damages for American Family's unreasonable refusal to pay the claim submitted by Blake for Deborah's illness.

## DISCUSSION AND DECISION

*Issue I. Summary judgment*

 Because we reverse on this issue, we will not discuss American Family's second issue. American Family asserts that the primary issue is whether Deborah's hospitalization in January, 1977, was for a condition or sickness which was first manifested either prior to the issuance of the policy or within 30 days thereafter. Upon arguing that Deborah's sickness was first manifested within the 30 day exclusionary period, American Family contends that the trial court erred in denying its motion for summary judgment as to Count I of Blake's amended complaint, which sought payment of Deborah's $2,598.78 medical bills.

This court, in *Carrell v. Ellingwood*, (1981) Ind.App., 423 N.E.2d 630, 636, reviewed the rules governing summary judgment as follows:

> "Summary judgment may be granted only if the pleadings, depositions, answers

to interrogatories, and admissions on file, together with the affidavits and testimony, if any, show that there was no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. T.R. 56(C); *Papp v. City of Hammond,* (1967) 248 Ind. 637, 230 N.E.2d 326; *Boswell v. Lyon,* (1980) Ind. App., 401 N.E.2d 735.

The purpose of summary judgment is to provide a procedural device for prompt disposition of cases where there is no genuine issue of material fact to be determined by a court or jury. *Hayes v. Second National Bank of Richmond,* (1978) Ind.App., 375 N.E.2d 647. It cannot and should not be used as an abbreviated trial. *Podgorny v. Great Central Insurance Company,* (1974) 160 Ind.App. 244, 311 N.E.2d 640. The trial judge may not weigh the evidence in a summary judgment proceeding. Even where the facts are undisputed, the ability to draw from these conflicting inferences which would alter the outcome will make summary judgment inappropriate. *Letson v. Lowmaster,* (1976) 168 Ind.App. 159, 341 N.E.2d 785. If any doubt remains as to the existence of a genuine issue of material fact, such doubt must be resolved against the movant of the summary judgment. *Hayes, supra; Raymundo v. Hammond Clinic Association,* (1980) Ind.App., 405 N.E.2d 65. In reviewing the propriety of a summary judgment the facts alleged by the party opposing the motion must be taken as true. *Boswell v. Lyon,* (1980) Ind.App., 401 N.E.2d 735. The material on file must be construed in favor of the opponent of the motion. *Waterfield Mortgage Company v. O'Conner,* (1977) [172] Ind.App. [673], 361 N.E.2d 924. The burden is on the proponent of the motion to demonstrate the absence of material fact. *Raymundo, supra.*

Even if the trial judge believes the proponent of the motion will prevail at the trial, or where he believes the likelihood of recovery are improbable, such are no bases for summary judgment. *Barbe v. Indianapolis Water Company,* (1980) Ind.App., 400 N.E.2d 1142; *Petro v.*

*McCullough,* (1979) Ind.App., 385 N.E.2d 1195. On a defendant's motion for summary judgment every applicable inference must be resolved in favor of the plaintiff and against the defendant. *Ebert v. Grain Dealers Mutual Insurance Company,* (1973) 158 Ind.App. 379, 303 N.E.2d 693."

Blake argues that Crohn's Disease was first diagnosed in January, 1977, and that prior to that time, Deborah had only been treated for ulcerative colitis. Citing *Mutual Hospital Insurance, Inc. v. Klapper,* (1972) 153 Ind.App. 555, 288 N.E.2d 279, Blake further argues:

"Under the applicable law, if Mrs. Blake's disease was not known to the insured prior to the effective date of the policy, nor capable of being diagnosed by a physician during this period, then the disease is covered under the policy.

The terms 'manifest' or 'active', as used in the applicable law, does not go so far as to allow a physician, in hindsight, to look back and say that a disease was active or manifest in a legal sense, at some earlier time, when that same physician could not have discovered that disease at that earlier time. Accordingly, Joseph Blake was entitled to Summary Judgment as to Count I of the amended complaint as a matter of law upon the uncontroverted and stipulated evidence before the trial court."

The court in *Klapper* held:

"... An illness 'exists' within the meaning of a health insurance policy excluding pre-existing conditions at such time as the illness becomes known to the insured or is capable of being diagnosed by a physician. The medical origin of an illness does not determine its existence.

&ast; &ast; &ast; &ast; &ast; &ast;

'... the illness, disease, or disability will ordinarily be deemed to have its inception when it first becomes manifest or active or when there is a distinct symptom or condition from which one learned in medicine can with reasonable accuracy diagnose the disease.' (Emphasis supplied.)

&ast; &ast; &ast; &ast; &ast; &ast;

The mere presence of latent germs or seeds of illness in the body prior to the issuance of a policy of health insurance does not alone preclude recovery. There must be something beyond the mere medical origin of the illness. . . .

From these cases we deduce the desirable rule for adoption in Indiana to be that *for a disease or illness or condition to 'exist' in a health insurance policy sense it must have become manifest or active or there must be some distinct symptom or condition from which a physician can make an accurate diagnosis of the disease.*" (Footnotes omitted, emphasis added.)

153 Ind.App. at 558–560, 288 N.E.2d 279.

From the holding above, we agree with American Family that the *Klapper* court set forth three alternative criteria for defining when a sickness "exists," separating each element by the disjunctive "or". Thus, as American Family correctly argues:

"Applying the rule set out in *Klapper* to the exclusionary period at issue in this case, coverage is not provided under the Blake policy for any sickness which, prior to the effective date of the policy or within thirty days thereafter was:

1. Manifest

 *or*

2. Active

 *or*

3. Displayed some distinct symptom or condition from which a physician could make an accurate diagnosis of the disease."

As the court in *Klapper* also stated:

"The majority rule recognizing a disease only to be in existence when it first manifests itself or is known to the victim or is capable of being diagnosed by a physician serves the dual purpose of protecting insurers from fraudulent applicants seeking coverage for known diseases while protecting innocent premium-paying insureds from being deprived of benefits for pre-existing conditions of which they have no knowledge. *Ray v. Hospital Care Ass'n.* (1952), 236 N.C. 562,

73 S.E.2d 475; *Randa v. Bear* (1957), 50 Wash.2d 415, 312 P.2d 640."

153 Ind.App. at 560, 288 N.E.2d 279.

We cannot agree with Blake that because the disease Deborah suffered from was not identified as Crohn's Disease by a physician within 30 days of the policy's effective date, the disease for which the claim was made was not "manifest or active". Dr. Rusche, at his deposition, testified on Deborah's bowel condition and its subclassifications into ulcerative colitis and Crohn's Disease as follows:

"A. It all depends how you ask that. From a medical standpoint, she's got the same disease now as she had then. The name that we apply to it, you can change it, but its merely a, the name is merely a conclusion reached by the medical mind that's examining the patient.

\* \* \* \* \* \*

Again, time, this diagnosis made through time, you know, the course of the disease, the radiologic findings, the pathologic findings, the distribution of the disease in the bowel, all these things go into making the diagnosis, and, again, it's a false classification contrived by physicians to help them handle the disease and to give some ability to prognosticate what the future lies in front of this individual patient."

Deborah's attending physician, Dr. Braun, stated by affidavit that ulcerative colitis is not the same disease as granulamatous colitis (Crohn's Disease). As part of the stipulated evidence with American Family's motion for summary judgment, Dr. Rusche's September 29, 1980 medical report on Deborah stated, in relevant part:

"Hindsight being what it is, I can say with reasonable medical certainty that her inflammatory bowel disease that she has now is the same inflammatory bowel disease she had in April of 1976 when she was admitted to Deaconess Hospital. And, it is quite apparent that this lady's inflammatory bowel disease was initially classified as ulcerative colitis on her first admission but it became evident that it

was Crohn's disease all along as one followed the course of her illness."

American Family presents argument and authority in support of granting its motion for summary judgment; however, as we find that the facts are conflicting, summary judgment is inappropriate. This case cries out for a full factual exploration at trial, and it is not a proper matter for summary disposition. The stipulated evidence alone shows quite clearly that there is a genuine issue of material fact as to whether Deborah's sickness was first manifested within the 30 day exclusionary period after application for health insurance. It was improper for the trial court to grant Blake's motion for summary judgment, and therefore, we reverse. The order of the trial court denying American Family's motion for summary judgment is affirmed.

*Issue III. Punitive damages*

On cross appeal, Blake merely contends that "American Family's refusal to pay the submitted claim was unreasonable, and done in a wanton and willful manner." Without presenting any further argument or citing authority, Blake seeks reversal of the trial court's order denying Blake's motion for summary judgment as to punitive damages.

 The failure to present any argument or citations of authority in support of a contention raised on appeal constitutes waiver of the alleged error. *Corn v. City of Oakland City,* (1981) Ind.App., 415 N.E.2d 129. Blake has waived any error. Furthermore, the award of punitive damages is discretionary, *Utopia Coach Corporation v. Weatherwax,* (1978) Ind.App., 379 N.E.2d 518, and after a careful review of all the material presented to the trial court by both sides upon their motions for summary judgment, we conclude that there is absolutely no evidence of fraud, malice, gross negligence or oppression by American Family in its denial of Blake's insurance claim. There is no evidence to support an inference other than American Family's denial of the claim was based on an honest dispute between it and the insured. As this court stated in *Hoosier Insurance Company, Inc.*

*v. Mangino,* (1981) Ind.App., 419 N.E.2d 978, 987, "an insurance company is not required to either pay or litigate at its peril." Even if judgment is eventually rendered against American Family, an insurance company will not incur punitive damages by making a good faith defense. *Mangino, supra.*

For all the above reasons, we affirm the order of the trial court summarily denying punitive damages.

Judgment reversed, in part, and affirmed, in part.

RATLIFF, P. J., and ROBERTSON, J., concur.